IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | | |
|---|---|---|
| Jaime K. Beason, | ) | C/A No. 0:13-3008-MGL-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| South Carolina Electric & Gas Company, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

    The plaintiff, Jaime K. Beason, filed this employment case alleging violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601, et seq.; and the South Carolina Payment of Wages Act, S.C. Code Ann § 41-10-10, et seq.; against her former employer, South Carolina Electric & Gas Company ("SCE&G").[1] This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report and Recommendation on SCE&G's motion for summary judgment. (ECF No. 21.) Beason filed a response in opposition (ECF No. 23), and SCE&G replied (ECF Nos. 24 & 30.) Having reviewed the parties' submissions and the applicable law, the court finds that the defendant's motion should be granted.

### BACKGROUND

    The following facts are either undisputed or are taken in the light most favorable to Beason, to the extent they find support in the record. Beason was employed by the defendant at its nuclear power station in Jenkinsville, South Carolina for approximately six years during which time she worked in the Plant Support Engineering Department as an Engineering Specialist. Among other

---

[1] The defendant removed this action from the Fairfield County Court of Common Pleas.

benefits that she received through her employer, Beason was provided with Paid Time Off ("PTO"), which allowed qualified employees to take time off from work after obtaining advanced supervisory approval.

In April of 2013, Beason requested FMLA leave for the birth of her son. She ultimately was approved for FMLA leave for the time period of May 18, 2013 through August 9, 2013. Approximately two months prior to her expected date of return to work, Beason contacted Melanie Sumner in the human resources department via email to inquire about requesting a reduced full-time schedule upon her return to work. In her response, Sumner provided the policy and procedure for such a request to Beason, suggesting she submit a written, detailed request. Beason did so on July 5, 2013, requesting to be considered for a reduced full-time schedule of thirty-two hours per week to allow for her take her son to and from daycare and to enable her manage her household on her own. Beason's request also expressed willingness to accept other positions within the company, if available.

On July 11, 2013, Beason spoke with Sumner by telephone. During this conversation, Sumner advised Beason that her request for reduced full-time employment had not yet been approved. According to Beason, Beason informed Sumner that, should her request be denied, she would use leave she had acquired from PTO, as well as other accrued leave[2] and holidays, to take her son to doctor appointments, and that Sumner responded "okay, great."

---

[2] Employees were also given "outage hours" due to the long hours worked when the nuclear reactor is shut down for approximately thirty days every eighteen months. According to Beason, these hours can be used as time off if certain goals are met.

Page 2 of 15



Sumner contacted Beason by telephone on August 7, 2013 to request that she meet with her and Kirk Weir[3] to discuss Beason's request. During the conversation, Sumner informed Beason that her request for a reduced full-time schedule had not been approved. Beason met with Sumner and Weir the next day at which time, according to Beason, Weir informed her that he needed her to work forty hours or more because they were short-staffed. Beason proposed that she could return to work and create her own reduced hours position by using her PTO, but Weir denied her request. Beason also requested that she be allowed to return to work for a couple of months, again using her PTO to reduce her schedule, or that she use her PTO as her two weeks' notice, but Weir again denied her requests.[4] Beason began crying and left the meeting to cry in the bathroom. Beason's employment with SCE&G ended as of August 12, 2013.

## DISCUSSION

**A.     Summary Judgment Standard**

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "[T]he mere existence of some alleged

---

[3] Kirk Weir supervised Eugene Baker, Beason's direct supervisor.

[4] Beason was ultimately paid for the time off she had accrued after recouping the advanced compensation contained in her first paycheck. Moreover, in Beason's response in opposition to summary judgment, she withdraws her claim under the South Carolina Payment of Wages Act. (ECF No. 23 at 1-2.)



factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine [dispute] of material fact." Ballinger v. N.C. Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir. 1987) (emphasis in original) (internal quotation marks & citation omitted). A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. Id. at 257.

In discrimination cases, a party is entitled to summary judgment if no reasonable jury could rule in the non-moving party's favor. Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 645 (4th Cir. 2002). The court cannot make credibility determinations or weigh the evidence, but the court should examine uncontradicted and unimpeached evidence offered by the moving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). The court must determine whether a party's offered evidence is legally sufficient to support a finding of discrimination and look at the strength of a party's case on its own terms. See id. at 148 (stating that "[c]ertainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational fact-finder could conclude that the action was discriminatory").

**B.     Burden Shifting Framework**

A plaintiff may demonstrate discrimination through direct or circumstantial evidence. When direct evidence is lacking, as in this case, a plaintiff may produce circumstantial evidence and proceed under the McDonnell Douglas burden-shifting framework. Warch v. Ohio Casualty Ins. Co., 435 F.3d 510, 520 (4th Cir. 2006); see also McDonnell Douglas Corp. v. Green, 411 U.S. 792,

802 (1973). Pursuant to this framework, once the plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendant to produce evidence of a legitimate, nondiscriminatory reason for the adverse action. Merritt v. Old Dominion Freight, 601 F.3d 289, 294 (4th Cir. 2010) (Title VII); see also Yashenko v. Harrah's NC Casino Co., LLC, 446 F.3d 541, 550-51 (4th Cir. 2006) (applying the McDonnell Douglas burden-shifting framework to FMLA claims of retaliation). The defendant's burden "is a burden of production, not persuasion." Reeves, 530 U.S. at 142. Once a defendant meets this burden by producing affidavits or testimony demonstrating a legitimate, nondiscriminatory reason, " 'the McDonnell Douglas frame-work—with its presumptions and burdens—disappear[s], and the sole remaining issue [is] discrimination *vel non*.' " Id.

In other words, if the defendant meets the burden to demonstrate a legitimate, nondiscriminatory reason, the plaintiff must demonstrate by a preponderance of the evidence that the proffered reason was " 'not its true reason[], but [was] a pretext for discrimination.' " Merritt, 601 F.3d at 294 (quoting Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)). Accordingly, the plaintiff's burden of demonstrating pretext " 'merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination.' " Merritt, 601 F.3d at 294 (quoting Burdine, 450 U.S. at 256) (alterations in original); see also Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 319 (4th Cir. 2005). To meet this "merged" burden, the employee may prove by a preponderance of the evidence that the decision maker's affidavit is untrue or that the employer's proffered explanation is unworthy of credence. Burdine, 450 U.S. at 256.

"[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, *may* permit the trier of fact to conclude that the employer unlawfully discriminated." Reeves, 530 U.S. at 148. However, "if the record conclusively reveal[s] some other, nondiscriminatory reason for the employer's decision, or if the plaintiff create[s] only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred," summary judgment is appropriate. Id. Accordingly, the court must evaluate "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law." Id. at 148-49. "Notwithstanding the intricacies of proof schemes, the core of every [discrimination] case remains the same, necessitating resolution of the ultimate question of . . . whether the plaintiff was the victim of intentional discrimination." Merritt, 601 F.3d at 294-95.

## C.  FMLA Retaliation Claim[5]

Under the McDonnell Douglas framework, to show a *prima facie* case of FMLA retaliation, a plaintiff must establish: (1) that she engaged in protected activity, (2) that the employer took adverse action against her, and (3) that the adverse action was causally connected to the plaintiff's protected activity. Yashenko, 446 F.3d at 551 (citing Cline v. Wal-Mart Stores, Inc., 144 F.3d 294, 301 (4th Cir. 1998)). In its motion, the defendant challenges Beason's ability to establish the second and third prongs of the *prima facie* case. For the reasons that follow, the court agrees that Beason

---

[5] As noted above, Beason withdrew her claim under the South Carolina Payment of Wages Act in her response to the defendant's motion for summary judgment. (ECF No. 23 at 1-2.) Therefore, the only claim remaining before the court is Beason's FMLA retaliation claim.



cannot demonstrate that the defendant took adverse action against her and therefore she cannot establish a *prima facie* case of FMLA retaliation.

With regard to the second prong, to establish that she suffered an adverse action with respect to a retaliation claim, a plaintiff must show that the adverse action was objectively material. Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006); see also Csicsmann v. Sallada, 211 F. App'x 163 (4th Cir. Dec. 12, 2006) (applying the "materially adverse" standard in White to FMLA retaliation claims). Accordingly, to fall within the anti-retaliation provision's protection, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.' " White, 548 U.S. at 68 (quoting Rochon v. Gonzales, 438 F.3d 1211, 1219 (D.C. Cir. 2006)).

The defendant first argues that Beason voluntarily resigned, while Beason argues that a reasonable jury could find that Beason was constructively discharged. However, the only evidence in the record belies Beason's contention. To establish that she was constructively discharged, Beason must show that the defendant created intolerable working conditions in a deliberate effort to force her to resign. Whitten v. Fred's, Inc., 601 F.3d 231 (4th Cir. 2010); Martin v. Cavalier Hotel Corp., 48 F.3d 1343, 1353-54 (4th Cir. 1995). A constructive discharge occurs only when a reasonable person in the employee's position would have felt compelled to resign. See Pennsylvania State Police v. Suders, 542 U.S. 129, 147 (2004). "An employee is protected from a calculated effort to pressure [her] into resignation through the imposition of unreasonably harsh conditions, in excess of those faced by [her] co-workers. [She] is not, however, guaranteed a working environment free of stress." Honor v. Booz-Allen & Hamilton, Inc., 383 F.3d 180, 187 n.2 (4th Cir. 2004).

Beason contends that the defendant created intolerable working conditions by denying Beason's requests to return to work at a reduced full-time work schedule and denying her request to create her own reduced schedule by using her accumulated PTO and outage hours. Beason stated that during the August 8th meeting, in denying her request to reduce her schedule by using her PTO, Weir and Sumner explained that Weir needed employees to work the hours and that they were short-staffed. Weir and Sumner further explained that Beason's proposals solved a payroll issue but not their need for manpower. (Pl.'s Dep. at 146-48, ECF Nos. 21-1 at 38 & 23-1 at 38.) Beason testified that Sumner also "made a comment about we all make sacrifices for family" and "Kirk [Weir] certainly knows that." (Pl.'s Dep. at 148, ECF Nos. 22-1 at 38 & 23-1 at 38.) However, Beason believed her request to use her PTO and outage time to make her own reduced schedule was the same arrangement she had prior to taking her FMLA leave because she had previously used that time whenever she needed to take time off. (Pl.'s Dep. at 192, ECF Nos. 21-2 at 49 & 23-1 at 49.) Therefore, Beason argues that contrary to the defendant's PTO policy, which Beason had used before her FMLA leave, the defendant essentially told her she could not use her PTO.

Beason's own testimony does not support the argument she now presents to the court. In her deposition, Beason admitted that she never informed Weir and Sumner that she would return to work and work the same schedule she had worked since she became employed. (Id.) Rather, her testimony clearly reflects that she was requesting regular use of her PTO to create an on-going reduced schedule. Her testimony does not reflect that she merely asked to use her leave for doctor's appointments or other leave as needed on an *ad hoc* basis as she had done in the past. Moreover, Beason stated that prior to her FMLA leave she regularly worked forty-four hours every other week, and even though she had never been told she had to work more than forty hours per week, she agreed

that it was a "rare exception" that she worked less than forty hours in any given week or less than eighty hours in a two-week period. (Pl.'s Mem. Opp'n Motion Summ. J. at 2, ECF No. 23 at 2; Pl.'s Dep. at 74, 208, ECF Nos. 22-1 at 20, 53 & 23-1 at 20, 53; Ex. 5, Pl.'s Dep., ECF No. 21-2 at 63 through ECF No. 21-3.) Further, Beason indicated that jobs fitting her skill set normally require a standard work schedule of forty hours per week. (Pl.'s Dep. at 126-27, ECF Nos. 21-2 at 33 & 23-1 at 33.)

Therefore, the court agrees with the defendant that asking Beason "to work the hours she consistently worked since 2007, the hours normally worked by anyone performing the job she held, and the hours normally required for her skill set, does not show that [the d]efendant intended those hours to force [Beason] to quit, or that working those hours would be so intolerable that a reasonable employee would feel compelled to resign." (Def.'s Reply Mem. Supp. Motion Summ. J. at 4, ECF No. 24 at 4.) Viewing the record as a whole, and even considering the actions alleged by Beason in combination, Beason has failed to introduce any evidence to show that the defendant deliberately created an intolerable working environment in excess of that faced by her co-workers to force Beason to resign. See Honor, 383 F.3d at 187 n.2 (stating that constructive discharge theory protects an employee from a calculated effort to pressure him into resignation by imposing unreasonably harsh conditions, in excess of those faced by his co-workers); see also Carter v. Ball, 33 F.3d 450, 459 (4th Cir. 1994) (holding that dissatisfaction with work assignments or unpleasant working conditions does not rise to intolerable conditions); McCain v. Waste Mgmt., Inc., 115 F. Supp. 2d 568, 576 (D. Md. 2000) (finding that dissatisfaction with work shifts, the length of hours worked, and work-related stress does not amount to "intolerable working conditions"); Long v. First Union Corp. of Va., 894 F. Supp. 933, 943-44 (E.D. Va. 1995) (holding that the plaintiff failed to establish

a constructive discharge claim where her supervisor refused to adjust her work schedule to accommodate her school but had adjusted other workers' schedules).

In the alternative, Beason argues that she suffered an adverse action because, upon return from her FMLA leave, the defendant did not restore her to the position she held before her leave or an equivalent position. (See Pl.'s Mem. Opp'n Motion Summ. J. at 13, ECF No. 23 at 13) (citing 29 U.S.C. § 2616(a)(1)).[6] Specifically, Beason argues that Sumner and Weir told her that she could not return to her old job and use her PTO and outage time for doctor's appointments and other things because Weir needed employees to work the hours, while prior to her FMLA leave she was allowed to use this time when she needed time off. As discussed above, the evidence does not support Beason's argument. Beason admitted that the defendant never indicated that, upon her return, she would be prohibited from using PTO for various things; instead the defendant indicated that she would not be guaranteed the ability to use PTO as she saw fit to create her own on-going reduced work schedule. (Pl.'s Dep. at 200-01, ECF No. 22-1 at 51-52 & 23-1 at 51-52.) Beason's testimony is reflective of the defendant's PTO Policy, under which an employee must seek and obtain advanced supervisory approval before using PTO. (Ex 16, Pl.'s Dep., ECF No. 21-5.) The Policy also reveals that PTO requests must be considered in light of departmental needs. (Id.) Beason's desire for guaranteed weekly leave is inconsistent with the Policy. Further, her reliance on an individual, Paul Bennett, who was able to use his PTO every other Friday for a limited period of time with the approval of a supervisor other than Weir, does not support her argument that the defendant did not restore her to the position she held before her leave or an equivalent position. Therefore, Beason has

---

[6] As pointed out by the defendant, to the extent that Beason is arguing that the defendant interfered with her FMLA rights rather than retaliated against her for exercising her FMLA rights, the analyses and legal conclusions would be the same.

failed to introduce any evidence to show that the defendant took adverse action against her by failing to restore her to the position she held before her leave or an equivalent position; rather, all the evidence demonstrates that Beason requested an ongoing reduction in her weekly hours via different proposals, which the defendant rejected. See Akers v. Bowl Am., Inc., No. Civ.A. 00-1342-A, 2001 WL 34760070, at *3 (E.D. Va. June 12, 2001) (finding that the plaintiff was restored to an equivalent position notwithstanding the other position's longer hours and increased physical labor upon return from her leave under FMLA).

Further, even if Beason could demonstrate a *prima facie* case of FMLA retaliation, the evidence reveals that the denial of Beason's requests for a reduced schedule and to use her PTO and other leave to create a reduced schedule was based on Beason's department being understaffed. In addition to Beason's testimony indicating that Weir and Sumner offered that reason during the August 8 meeting, Weir attests that at the time Beason made her requests, her department had a substantial workload and a number of vacant positions, and therefore he found it necessary for Beason to work the hours normally associated with her position. (Weir Aff. ¶¶ 4, 6, ECF No. 24-1 at 2-3.) Beason suggests that these reasons were pretextual because the defendant did not hire anyone to replace her. However, Weir attests that the vacancy created by Beason's resignation was added to the other existing department vacancies, but that a hiring freeze went into effect on October 7, 2013 through January 1, 2014. The defendant concedes that Beason's position has not been directly filled; however, her department now has more manpower than it did at the time she resigned and Beason's duties have been divided among the department staff. (Id. ¶¶ 7-9, ECF No. 24-1 at 2.) Accordingly, the only evidence in the record belies Beason's supposition of pretext.

Beason also appears to rely on comparator evidence. See Laing v. Fed. Express Corp., 703 F.3d 713, 719-20 (4th Cir. 2013) (generally discussing the compelling nature of comparator evidence at the pretext stage of the burden shifting framework). She argues that the defendant's reasons were pretext for retaliation because two other individuals or comparators—Paul Bennett and a female individual[7]—were allowed to reduce their work schedules. However, having reviewed these allegations and information on these two individuals, the court finds that Beason has not identified any comparators that are similarly situated to her in all relevant respects. See Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir. 1992) (Title VII & ADEA) (defining "similarly situated");[8] see also Haywood v. Locke, 387 F. App'x 355, 359 (4th Cir. 2010) (stating that "plaintiffs are required to show that they are similar in all relevant respects to their comparator"). The female individual presented different medical circumstances for the reduced schedule, did not work in the same department as Beason, and did not have the same supervisor as Beason. See Haywood, 387 F. App'x at 359 (stating that an employee is similar in all "relevant respects" if he or she " 'dealt with the same supervisor, [was] subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it' ") (quoting Mitchell, 964 F.2d at 583). Moreover, the female individual was

---

[7] The defendant has submitted the name and other personal identifying information of the alleged female comparator under seal as this information contains personal health information of a non-party.

[8] The Fourth Circuit has not issued a published case on this point; however, the following unpublished cases have cited with approval the Mitchell decision: Atkins v. Holder, 529 F. App'x 318, 321 (4th Cir. 2013); Haywood v. Locke, 387 F. App'x 355, 359 (4th Cir. 2010); Forrest v. Transit Mgmt. of Charlotte, Inc., 245 F. App'x 255 (4th Cir. 2007); Heyward v. Monroe, 166 F.3d 332, 1998 WL 841494, at *2 (4th Cir. 1998); Edwards v. Newport News Shipbuilding & Dry Dock Co., 166 F.3d 1208, 1998 WL 841567, at *3 (4th Cir. 1998).

in the same protected group as Beason, as she had been on FMLA maternity and requested reduced hours upon her return to work.  See Laing, 703 F.3d at 719 (stating that the McDonnell Douglas Court "explained that 'especially relevant' to a showing of pretext would be evidence that other employees who were similarly situated to the plaintiff (*but for the protected characteristic*) were treated more favorably") (emphasis added) (quoting McDonnell Douglas, 411 U.S. at 804).  Beason also argues that Bennett was allowed to take every other Friday off with his PTO; however, Weir was not the decisionmaker with regard to Bennett's request, which was ultimately for a limited number of months, while Beason's request was for an unspecified and potentially indefinite period of thirty-two hour work weeks, even during outage time, with no weekend or holiday work and no travel.  As such, she has presented insufficient evidence to show that these proffered reasons were false or were otherwise a pretext for retaliation.[9]  See Merritt, 601 F.3d at 294.  Moreover, based on the evidence before the court, no reasonable jury could conclude that she was the victim of FMLA retaliation.  See Reeves, 530 U.S. at 148; Merritt, 601 F.3d at 294-95.  Therefore, the defendant's motion for summary judgment should be granted as to this claim.

---

[9] To the extent that Beason attempts to rely on comments or actions taken by her direct supervisor, Baker, prior to her leave under FMLA, the court observes that the undisputed evidence demonstrates that Baker did not play any role in denying Beason's requests for a reduced work schedule.

**RECOMMENDATION**

For the foregoing reasons, the court recommends that the defendant's motion for summary judgment (ECF No. 21) be granted.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

January 23, 2015
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.' " Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).